ELLIS, Judge.
On the morning of February 18th, 1948, shortly after seven A.M., Gayle A. Barrios, accompanied by the plaintiff (guest passenger) was driving his automobile on the PIouma-Raceland Highway when a collision occurred between his automobile and a truck belonging to the defendant, Nichols Truck Line, which was being driven by an employee, Arthur W. Arnold. Barrios and Bergeron both have filed suit for personal injuries sustained as a result of the accident against I. A. Nichols, doing business in the name of Nichols Truck Line, and the employee-operator of the truck, Arthur W. Arnold, and the public liability insurance carrier of Nichols Truck Line, the Highway Insurance Underwriters, in which the plaintiff Ber-geron prayed for damages for his injuries in the sum of $19,567.92, and Barrios is .seeking the recovery of $15,600.00 with interest and costs.
The cases were consolidated for the purpose of. trial and are also consolidated on this appeal, separate judgments having been rendered by the lower court in favor of the plaintiff Bergeron in the sum of $13,308.92 with interest at the rate of 5% from judicial demand and for all costs, and judgment rendered in favor of the plaintiff Barrios in the sum of $8,450.00 with 5% interest from judicial demand and all costs, and further judgment in favor of the intervenor, Fidelity and Casualty Company of .New York, as prayed for and in the further sum of $5.0.00 as attorney fees in connection with the services rendered in the intervention, and ordering that intervenor’s judgment be paid out of the proceeds of the judgment rendered herein in favor of the plaintiff, Gayle A. Barrios, first and by priority.
The defendants have appealed from this judgment, however, they do not strenuously deny the liability, but seriously question the quantum.
At the time that this accident happened the highway was .enveloped in a heavy fog and the automobile and truck involved were . travelling in opposite directions when the truck suddenly pulled out of its lane of traffic in order to pass a motor vehicle. Barrios, upon being confronted with this large truck in his lane of traffic, pulled toward the shoulder of the highway and the operator of the truck, being unable to get back to his proper lane of traffic due to automobiles travel-ling therein, also pulled toward the shoulder of the highway and the head-on collision occurred. It would be useless to detail the testimony as there is no question that on this foggy morning, with visibility very poor, the driver of the Nichols truck was extremely negligent in driving his truck into the lane of on-coming traffic in an effort to pass another motor vehicle in the face of on-coming traffic.
The question of liability may be disposed of in the words of the District Judge in his opinion as follows: “The testimony is overwhelmingly conclusive that the accident which occasioned the injuries made the subject matter of these proceedings, was the result of negligence on the part of Arthur W. Arnold, a truck driver of the Nichols Truck Line belonging to I. A. Nichols, one of the defendants. This conclusion is clearly evidenced by the admission of Arnold, also a defendant, who was the first witness called to testify under cross examination. -Consequently, the only question involved in these proceedings is the quantum of damages.”
*142 As soon as possible after the accident, the plaintiff Bergeron' was taken to Dr. Willard Ellender in the town of Houma, where he was rendered first aid in the nature of dressing and suture of the cut or wound on his forehead and right upper lip, and suture of the wound of the nose, and reduction under gas of the dislocation of the fifth metacarpo phalangeal joint, the placing of a splint on the right hand in order to prevent a recurrence of the dislocation, and the application of a cast to the right foot as a result of a fracture of the proximal end of the seventh metatarsal bone, and treatment of severe contusions of the left knee with extensive ecchymosis of the medial and prepatella region, contusions and brush burns of the left hand and contusion of the chest. After treatment by Dr. Ellen-der at hi’s clinic the plaintiff was taken to his home and the bill of Dr. Ellender shows that he made four home visits and that on March 8th, 1948 the plaintiff made his first office visit to Dr. Ellender which was repeated five times. On May 18th, 1948, or exactly three months from the date of the injury, Bergeron, who was employed by the Southern Pacific Railroad Company as assistant express messenger, reported for duty and returned to work.
From the time of his injury and for a period of approximately four weeks he was attended by a nurse, however, we are inclined to believe after reading the record that the services of the nurse were not necessary for that length of time but the defendant is not disputing her bill of $448.-00 for the four weeks services so neither will we. The wound on Bergeron’s forehead is described by Dr. Ellender in his letter of April 26th, 1948 as a three inch laceration of the forehead. This wound completely healed and left a slight scar approximately two and one-half inches just below the hair line and is hardly noticeable. The small wound over the bridge of the nose required two stitches and left no scar and the wound to the right upper lip healed satisfactorily and left no scar. The contusion and injury to the left hand completely healed, leaving a small scar approximately one and one-quarter inches in length. The injury to his left leg healed without any after effects and the injury to the right foot and ankle completely healed although it stayed swollen for several months which swelling was, in the opinion of Dr. Shirley Lyons, due to the period of immobolization and disuse. Ber-geron also lost a filling out of a right upper tooth which he had replaced by Dr. Comeaux whose bill for the work was only $3.00 so this could not have been very serious. The only permanent impairment which Bergeron suffered was a ten per cent disability in the right hand, as a result of the injury to the little finger joint and also accompanying injury to the ring finger joint on the right hand. The plaintiff is unable to completely close the right hand as the little finger has a tendency to draw to the left and prevents the closure.
According to the testimony, the splint on the right hand for the dislocation of the little finger was removed at the end of the seventh day at plaintiff’s home by Dr. Ellender, and by the end of the tenth day the plaintiff was able to use the left hand which had been injured, and after two weeks he could use the right hand to the extent of attempting to close it. The injury to the chest was not internal but it was severely bruised as it was discolored across the lower part of the chest the width of approximately eight inches which no doubt caused him quite a bit of pain as did the contusions of the left knee and the injury to the right foot. The cast on the right foot was removed after six weeks and he used crutches thereafter. The final report of Dr. Ellender on September 6, 1948 was to the effect that Bergeron had fully recovered except for a complaint of pain in the right hand near the region of the fifth metacarpal phalan-geal joint which was dislocated and that the small finger had a tendency to adduct when the hand was flexed and it interfered with the ring finger which interfered with the function of the hand, particularly when grasping an object, and that, in his opinion, Bergeron had a ten per cent permanent disability of the right hand as a result of this condition.
*143 Bergeron was also examined by Dr. Shirley Lyons on May 11, 1948 and in his report he correctly detailed the injuries suffered by plaintiff and stated, that he had recovered from these injuries and should be able to resume his normal routine after a.period of 30 to 40 days after his examination, and that, in his opinion, there would be no permanent disability. On February 10th, 1949, Dr. Lyons submitted another report as a result of a reexamination of plaintiff on January 27th, 1949 in which he stated that the right ring and right fifth fingers did not extend completely when resting on a flat surface, and that the right fifth finger flexed to about 30 or 40 per cent and the right ring finger to about 50 per cent which, in his opinion, was the result of the old dislocation of the fifth finger and associated trauma to the fourth and the long period of immobilization. All of Bergeron’s other wounds and injuries had healed with no permanent aftermath except the disability to the right hand. Dr. Lyons stated that Ber-geron was a most cooperative patient with a splendid attitude.
Thus, we have a man who was unable to work for three months due to his injuries and who was treated at his home for a period of ten days and was able to visit the doctor’s offce on the 19th day after the injury for treatment. Taking into consideration the nature and extent of his wounds, bruises and injuries, there is no doubt that the plaintiff must have suffered quite a bit of pain for ten days and also suffered some pain but to a lesser degree thereafter for a period of several months. We cannot agree with the trial judge in his award in this case as the wounds and injuries- which left no permanent disability whatsoever would be compensated by- an award under the head of physical pain and suffering, whereas the judge of the lower court, for example, has allowed $3,000.00 for pain and suffering, and $2,000.00 for mental anguish and, in addition, allqwed lump sums for each injury as wound and scar on forehead, $600.00; injury to nose, $250.00; injury to mouth and lips, $150.00; injury to teeth, $50.00.
Of course, as to the quantum of damages, each case must be judged on its own facts, and under the facts in this case and in line with the previous decisions, it would be our opinion that plaintiff is entitled to $3,000.00 for his injuries, disfigurement, mental anguish, pain and suffering, together with $846.00 for loss of wages, $662.92 for doctor, drug, dentist and nursing expenses, totalling $4,508.92.
It is, therefore, ordered that the judgment of the District Court, as amended be affirmed.
ROBERT D. JONES, J., sitting ad hoc.